IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AOB PRODUCTS COMPANY, | |
| Plaintiff, | |
| v. | C.A. No. 22-1264-GBW |
| GOOD SPORTSMAN MARKETING, LLC, | |
| Defendant. | |

### MEMORANDUM ORDER

Pending before the Court is Defendant Good Sportsman Marketing, LLC's ("GSM") Motion to Bifurcate (D.I. 18, the "Motion"), which has been fully briefed (D.I. 18, 19, 20). The Court held oral argument on January 6, 2023. For the following reasons, the Motion is denied.

### I. BACKGROUND

Plaintiff AOB Products Company ("AOB") owns the federal trademark registrations for its TACK DRIVER, LEAD SLED, and DEADSHOT marks (collectively, the "Asserted Marks"). D.I. 1 ¶¶ 72, 75-79. According to AOB, LEAD SLED is registered for "shooting rests" and "weight bags, sold empty, for holding sand or other weighed materials, and used to stabilize gun rests," *Id.* ¶¶ 75-76, TACK DRIVER is registered for "support devices for firearms, namely, shooting bags," *Id.* ¶ 77, and DEADSHOT is registered for "support devices for firearms, namely, shooting bags" and "firearm attachments, namely, mounts for attaching accessories to a firearm; firearm attachments, namely, mounts for use with monopods, bipods, and tripods; support bases and accessory trays for shooting rests." *Id.* ¶¶ 78-79.

Additionally, AOB owns the rights to U.S. Patent Nos. 10,317,162 (the "'162 patent") and 9,702,653 (the "'653 patent") directed to AOB's LEAD SLED shooting rest. *Id.* ¶¶ 37-46. AOB

explains that the LEAD SLED "provides an innovative shooting rest that limits rearward movement from the firearm when fired and reduces recoil felt by the shooter." *Id.* ¶ 37.

AOB alleges that GSM used the Asserted Marks without AOB's permission or authority by marketing its "Lead Sled" weight bags, "TackDrive" shooting rest bags and "Tactical Deadshot" shooting rest bag, *id.* ¶¶ 19-21, 23, 26, 80, and that GSM's "Alpha Shooting Rest" product infringes claims of the '162 and '653 patents, *id.* ¶ 49. As a result, AOB presently asserts a seven-count Complaint consisting of federal claims of trademark counterfeiting ("Count 1"), trademark infringement ("Count 2"), false designation of origin and unfair competition ("Count 3"), and patent infringement ("Counts 6 and 7"), as well as state law claims for deceptive trade practices and common law trademark infringement ("Count 4") and unfair competition ("Count 5"). *See generally* D.I. 1.

In its Answer, GSM denied any trademark counterfeiting alleged in Count 1 (D.I. 16 ¶¶ 71-72), admitted to infringing AOB's Asserted Marks pursuant to Count 2 (*Id.* ¶¶ 80-82), denied AOB's entitlement to damages for false designation of origin, unfair competition, deceptive trade practices, and state law trademark infringement alleged in Counts 3, 4, and 5 as "based on the same accused conduct" as the trademark infringement claim (*Id.* ¶¶ 93, 97, 104-10), and denied any patent infringement alleged in Counts 6 and 7 (*Id.* ¶¶ 111-146).[1] When responding to AOB's prayer for relief, GSM admitted that "the Court should enter an Order declaring that GSM infringed the [Asserted] [M]arks from June/July 2021 to February 2022 under 15 U.S.C. § 1114 and permanently enjoin GSM and each of its officers, agents, servants, employees, parents,

---

[1] GSM also asserts four counterclaims seeking declaratory judgments of non-infringement and invalidity related to the two patents-in-suit. D.I. 16 at 23-26.

subsidiaries, affiliates, and those acting in active concert or participation with them from infringing the [Asserted] [M]arks." *Id.* at 19-20.

According to GSM, because GSM admitted to trademark infringement, only the issue of damages remains to be adjudicated with respect to AOB's trademark claims. D.I. 18 at 1. As a result, GSM contends that it proposed to AOB that the parties "bifurcate the trademark infringement claims from the remaining claims in suit, request the Court enter final judgment in favor of AOB on the trademark infringement claims, and then set the trademark infringement claims for a trial on damages if they could not reach agreement on the trademark infringement." *Id.* at 3. AOB declined, stating that it "will not settle the TM issues separately from the patent issues." D.I. 18-1. GSM filed the instant Motion requesting the relief to which AOB would not agree. D.I. 18.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 42(b) permits the Court to order a separate trial of one or more separate issues "[f]or convenience, to avoid prejudice, or to expedite and economize . . . ." If a party moves for bifurcation, it has the burden to establish that bifurcation "is appropriate." *SenoRx, Inc. v. Hologic, Inc.*, 920 F. Supp. 2d 565, 567 (D. Del. 2013) (citations omitted); *Sprint Commc'ns Co. L.P. v. Charter Commc'ns, Inc.*, C.A. No. 17-1734-RGA, 2021 WL 982730, at *1 (D. Del. Mar. 16, 2021). The district court has "broad discretion" when it decides "whether to separate the issues[,]" *Idzojtic v. Pennsylvania R. Co.*, 456 F.2d 1228, 1230 (3d Cir. 1972); *see Thabault v. Chait*, 541 F.3d 512, 529 (3d Cir. 2008) (citing *Idzojtic*, 456 F.3d at 1230), though "'bifurcation remains the exception rather than the rule.'" *Sprint*, 2021 WL 982730, at *1 (citation omitted). The Court "'should consider whether bifurcation will avoid prejudice, conserve judicial resources, and enhance juror comprehension . . . .'" *Id.* (citation omitted). "In deciding whether one trial or separate trials will best serve [the above factors] . . . the major consideration is directed

3

toward the choice most likely to result in a just final disposition of the litigation." *In re Innotron Diagnostics*, 800 F.2d 1077, 1084 (Fed. Cir. 1986).

## III. DISCUSSION

GSM, contending that "there is no reason to delay resolution of damages on the trademark claims," requests that the Court "(1) bifurcate the trademark infringement and related claims, (2) enter final judgment on the trademark infringement claims in favor of AOB, and (3) separately set the trademark infringement claims for a trial on damages." D.I. 18 at 1. In response, AOB argues that GSM has not met its burden to demonstrate that bifurcation will avoid prejudice, conserve judicial resources, nor enhance juror comprehension. D.I. 19 at 8-12. The Court agrees with AOB.

First, GSM has not shown that bifurcation would avoid prejudice. While GSM explains that "the parties will not face any inconvenience or prejudice, such as duplicative discovery" because AOB's patent and trademark claims relate to different accused products, D.I. 18 at 5, AOB identifies potentially overlapping witnesses involved in both sets of claims, as well as overlapping issues related to willful and intentional infringement, and the commercial success of AOB's patented products. D.I. 19 at 8-12.[2] While GSM nevertheless maintains that the patent and trademark issues have "no relevance" to each other and that any overlap would be "minimal", D.I. 20 at 4-5, AOB presented at least one picture during oral argument that appeared to show the alleged infringing patent and trademark products are displayed and/or marketed together at least

---

[2] *See Liqwd, Inc. v. L'Oreal USA, Inc.*, C.A. No. 17-14-JFB-SRF, 2019 WL 365708, at *2 (D. Del. Jan. 30, 2019) (denying motion to bifurcate based on potentially overlapping evidence between claims and explaining that "holding separate trials on L'Oréal's Lanham Act, false promise, breach of contract, and false marking counterclaims would result in prejudice to L'Oréal by requiring L'Oréal to present the same evidence at two separate trials."); *Synopsys, Inc. v. Magma Design Automation*, C.A. No. 05-701-GMS, 2006 WL 1452803, at *4 (D. Del. May 25, 2006) (declining to bifurcate antitrust claims from patent claims where "the evidentiary presentation in one case would likely be substantially duplicative of the evidentiary presentation in the other.").

4

in some stores. Moreover, it would be premature for the Court to make the evidentiary determination that the patent and trademark issues have "no relevance" to each other at this early stage of the case before any discovery has occurred. Further, GSM's complaint that AOB "intends to weaponize the trademark infringement admission against GSM," D.I. 20 at 1, contemplates speculative harm that could be cured by an evidentiary motion at the appropriate time rather than bifurcation now. *SenoRx*, 920 F. Supp. 2d at 570; *Sprint*, 2021 WL 982730, at *1 ("A significant part of Defendants' argument concerns potential prejudice due to Plaintiff's use of prior litigation successes that 'so permeate its damages and willfulness theories.' In their Motion for Summary Judgment, Defendants argue that such evidence is irrelevant and an unreliable source in calculating damages. The Court is separately evaluating the merits of this argument and is excluding any evidence regarding prior litigation as to damages."). Thus, this factor does not support bifurcation.

Second, GSM has not shown that bifurcation would conserve judicial resources. GSM argues that "bifurcation will expedite resolution of the trademark infringement and related claims" because the action is in its "early stage" and GSM "has admitted liability on trademark infringement and agreed to a permanent injunction." D.I. 18 at 4. However, issues of liability appear unresolved as GSM specifically denies that it engaged in counterfeiting AOB's TACK DRIVER mark, D.I. 16 ¶ 73, and specifically denies that its trademark infringement was willful and intentional, *id.* ¶ 27. While GSM maintains that "the parties can easily litigate the issues of counterfeiting and willfulness along with the damages phase of the trademark infringement claims," D.I. 20 at 5, GSM cites to no authority condoning bifurcation simply because liability has been established on some, but not all, claims. Indeed, it appears that, rather than promote judicial economy, GSM's proposal would "create additional work for everyone involved" in light of the potentially duplicative discovery at issue (as explained *supra*) and future disputes "over what is

5

appropriately part of the liability phase versus the damages phase." *Evertz Microsystems Ltd. v. Lawo Inc.*, C.A. No. 19-302-MN-JLH, 2021 WL 706457, at *2 (D. Del. Feb. 23, 2021). Therefore, this factor also does not support bifurcation.

Third, GSM has not met its burden to demonstrate that bifurcation will enhance juror comprehension. GSM's bare allegations during oral argument that the jury may be confused and unable to distinguish between patent infringement and trademark infringement underestimates the ability of juries and are not persuasive.

Finally, GSM's assertion that "[t]here is no basis or benefit to holding damages for trademark infringement in limbo while the parties adjudicate the patent infringement claims" does not carry the day. D.I. 18 at 4. "[T]he major consideration [in considering bifurcation] is directed toward the choice most likely to result in a just final disposition of *the litigation*," not just the choice most likely to favor disposition of GSM's claims and/or defenses. *Innotron*, 800 F.2d at 1084 (emphasis added). Bifurcation is not appropriate under these circumstances. *Sprint*, 2021 WL 982730, at *1.

## IV. CONCLUSION

For the foregoing reasons, GSM has not met its burden to demonstrate that bifurcation will avoid prejudice, conserve judicial resources, and enhance juror comprehension.

WHEREFORE, at Wilmington this 9th of January, 2023, **IT IS HEREBY ORDERED** that GSM's Motion to Bifurcate (D.I. 18) is **DENIED**.

GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE